UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
CV-12                          4617
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
MELISSA MCALLISTER and KENNETH SAPP

                          Plaintiffs,          SUMMONS ISSUED

        -against-                              **COMPLAINT**
                                               (Jury Trial Demanded)


CITY OF NEW YORK, THE NEW YORK CITY GERSHON, J.
POLICE DEPARTMENT, POLICE OFFICER ERIC
ANDERSEN Shield #27160, tax #934396, and POLICE
OFFICERS JOHN DOES and/or JANE ROES Nos. 1-10,
individually and in their official capacities (the names
John Doe and Jane Roe being fictitious, as the true names
are presently unknown), OF THE 107th PRECINCT,

                          Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

        Plaintiffs Melissa McAllister and Kenneth Sapp, by their attorney Rochelle Berliner,

Esq., for their complaint, alleges as follows:

                              **INTRODUCTION**

        1.      Plaintiffs Melissa McAllister and Kenneth Sapp bring this action, pursuant to 42

U.S.C. § 1983, to redress the deprivation of their federal constitutional rights.  More specifically,

on June 17, 2011, at approximately 10:00 p.m., Defendant Police Officer Eric Andersen

("Defendant Andersen") and Police Officer John Doe No. 1 (whose name and shield number are

unknown at this time), and Police Officers John Doe and/or Jane Roe # 2-10 (whose names and

shield numbers are unknown at this time), each of whom was a member of the New York City

Police Department ("NYPD"), engaged in unnecessary, non-consensual, excessive force against

Ms. McAllister by subjecting her to offensive sexual contact as well as by using excessive force

during the course of her arrest, and used unnecessary and excessive force against Mr. Sapp during the course of his arrest.

2.      Subsequent to her arrest, Defendant Anderson, Police Officers John Does and Jane Roes Nos. 1-10, subjected Ms. McAllister to additional use of unnecessary and excessive force, and subjected Mr. Sapp to additional use of unnecessary and excessive force, threats, and denial of medical care.

3.      Ms. McAllister and Mr. Sapp bring suit to redress these aspects of the violation of their federal and state constitutional rights.

## JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. §§ 1331 and 1343, jurisdiction is proper as Ms. McAllister's and Mr. Sapp's claims arise under federal law.  Pursuant to 28 U.S.C. § 1367, jurisdiction is proper as the claims of Ms. McAllister and Mr. Sapp arise under the common law of the State of New York.

5.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Eastern District of New York because the events forming the basis of Plaintiffs' Complaint occurred in that District.

## PARTIES

6.      Ms. McAllister is a citizen of the United States.  She resides in the State of New York, Kings County.

7.      Mr. Sapp is a citizen of the United States. He resides in the State of New York, Bronx County.

8.      Defendant Andersen was, at all times relevant herein, a member of the New York City Police Department ("NYPD"). Upon information and belief, at all times relevant herein, he was assigned to the 107th Precinct.

-2-

9.      Upon information and belief, Defendant Andersen is still a member of the NYPD. At all times relevant herein, he was acting within the scope of his employment and under color of law.

10.     Defendant police officers John Does and/or Jane Roes #1-10, shield nos. unknown, were, upon information and belief, members of the NYPD. Upon further information and belief, at all times relevant herein, they were assigned to the 107th Precinct.

11.     At all times relevant herein, police officers John Does and/or Jane Roes #1-10 were acting within the scope of their employment and under color of law.

12.     Defendant City of New York is a municipal corporation organized pursuant to the laws of the State of New York. It has all the powers vested in it by the laws of the State of New York, the City of New York and the Charter of the City of New York. At all times relevant herein, it was the employer of the individually named defendants.

## ADMINISTRATIVE PREREQUISITES

13.     On September 13, 2011, Ms. McAllister and Mr. Sapp filed a timely Amended Notice of Claim with Defendant City in the Office of the City Comptroller, in accordance with the General Municipal Law, concerning their arrests.

14.     At least thirty days have elapsed since Ms. McAllister and Mr. Sapp filed the Notice of Claim and adjustment or payment thereof has been neglected or refused. This action is commenced within one year and 90 days from the date of the occurrences alleged herein, as required under Section 50-i of the General Municipal Law.

15.     Upon information and belief, a 50-h hearing has never been conducted or rescheduled.

-3-

## FACTS UNDERLYING THE COMPLAINT

16.     At approximately 10:00 p.m. on June 17, 2011, Ms. McAllister, Mr. Sapp and one other individual were talking and sitting against a wall in the playground area at Public School (P.S.) 86 on Parsons Boulevard in Queens County.

17.     At about that time, Defendant Andersen and Police Officer John Doe No.1, neither of whom were displaying an NYPD shield, approached them in plainclothes, with guns drawn, shone a flashlight on them and in their face, and ordered them to put their hands up.

18.     Ms. McAllister and Mr. Sapp immediately complied, as did the third individual who was with them.

19.     Defendant Andersen or Police Officer John Doe No. 1 patted down the third individual and, upon finding no contraband on him, ordered him to sit down.

20.     Defendant John Doe #1 patted down Mr. Sapp and discovered a small amount of marijuana in Mr. Sapp's pocket; he was rear-cuffed and ordered to sit down, which he did.

21.     Defendant Andersen began to pat down Ms. McAllister. Uncomfortable with a male officer touching her body, Ms. McAllister asked, "Where's the female officer?"

22.     Defendant Andersen replied, in sum and substance, "There's no female officer, you watch too much fucking TV."

23.     Defendant Anderson searched through Ms. McAllister pockets and discovered a small amount of marijuana inside one of her pockets.

24.     Defendant Anderson then handcuffed Ms. McAllister from the rear and ordered her to sit down, which she did.

25.     Defendant Andersen then ordered the third individual to leave.

-4-

26.     When Ms. McAllister asked this third individual to make a phone call for her, Defendant Andersen threatened to arrest him if he stayed.

27.     The third individual left the scene.

28.     Ms. McAllister then informed Defendant Andersen that her brother got "just a ticket" for marijuana possession and that she had to work the next day.

29.     Defendant Andersen stated to her, in sum and substance, "What is it with you? You talk too fucking much. You're not going to work tomorrow. I'm going to make sure of that."

30.     Defendant Andersen then pulled Ms. McAllister up by her arm and while she was standing, with her hands cuffed behind her, he inserted his hands inside the front of Ms. McAllister's jeans and panties, and touched and fondled her vagina.

31.     Fearing that she would be raped by Defendant Andersen, Ms. McAllister abruptly pulled away.

32.     Mr. Sapp and Ms. McAllister were taken to the 107th Precinct in handcuffs.

33.     At the 107th Precinct, Mr. Sapp repeatedly asked Defendant Anderson and Defendants John Does and/or Jane Roes # 1-10 to loosen his handcuffs as they were cutting into his wrists, causing substantial pain.

34.     Defendants John Does and/or Jane Roes # 1-10 ignored his repeated requests.

35.     Due to the substantial pain he was experiencing, Mr. Sapp brought his arms over his head so that his hands were cuffed in front of him. Mr. Sapp's hands remained cuffed the entire time.

36.     Defendant Andersen then stated to Mr. Sapp, in sum and substance, "What the fuck are you doing, bro?"

37.     Defendant Anderson and Defendants John Does # 1-10 then tackled Mr. Sapp to the ground, pushed Mr. Sapp's head into the floor, kneed Mr. Sapp in the back, and punched and kicked Mr. Sapp while Mr. Sapp was being held down.

38.     Defendant Andersen, along with assistance from one or more of the Defendant John Does #1-10, removed Mr. Sapp's handcuffs, re-cuffed him from behind with multiple sets of handcuffs, including one set through the belt loops of his pants, and kicked him again.

39.     Mr. Sapp was crying.

40.     During this incident, Defendant Andersen threatened to slit Mr. Sapp's throat and said, in sum and substance, "I'll fucking kill you."

41.     Ms. McAllister witnessed this incident and pleaded with the Defendants to stop.

42.     In response and without provocation, Defendants John Does and/or Jane Roes #1-10 shoved Ms. McAllister against a rail at the precinct, causing her severe pain in her ribs.

43.     Mr. Sapp requested again that Defendants Anderson and one or more of Defendants John Doe and/or Jane Roe #1-10 loosen his handcuffs as he was losing feeling in his fingers.

44.     Defendants ignored his request.

45.     After approximately a few hours, Ms. McAllister and Mr. Sapp were taken to Central Booking and both were charged with Criminal Trespass and Unlawful Possession of Marijuana.

46.     When Ms. McAllister appeared in court on June 18, 2011, her case was adjourned in contemplation of dismissal. Upon information and belief, her case was subsequently dismissed and sealed.

-6-

47.    When Mr. Sapp appeared in court on June 18, 2011, he pled guilty to a lesser charge of Disorderly Conduct.

48.    As a result of this incident, Ms. McAllister experienced bruising to her ribs, humiliation, anxiety, depression, loss of sleep, and upon information and belief, sought counseling from a social worker.

49.    As a result of this incident, Mr. Sapp experienced bruising, injury, cuts to his wrists, and anxiety and was treated in an Emergency Room subsequent to his release from custody.

50.    Upon information and belief, Defendant Anderson is the subject of a civil lawsuit brought by an individual - unrelated to this matter – who has alleged that Defendant Anderson used excessive force in effecting an arrest by beating that plaintiff repeatedly and kneeing him in the chest while threatening to kill him. That plaintiff was also refused medical attention after Defendant Andersen deliberately tightened his handcuffs and pulled his arms in a deliberate manner to cause him pain.[1]

## AS AND FOR A FIRST CAUSE OF ACTION
### (Deprivation of Rights under 42 U.S.C. § 1983)

51.    Plaintiffs MELISSA MCALLISTER and KENNETH SAPP repeat and re-allege the allegations contained in paragraphs numbered "1" through "50," as if fully set forth herein.

52.    All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

53.    All of the aforementioned acts deprived plaintiffs Melissa McAllister and Kenneth Sapp of the rights, privileges and immunities guaranteed to citizens of the United States

---

[1] Frazier v. Andersen, et. al., 10 CV 5423 (LB) (ENV)

-7-

by the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

54.     The acts complained of were carried out by the aforementioned defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

55.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

56.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

### AS AND FOR A SECOND CAUSE OF ACTION (for Plaintiff McAllister)
### (Unlawful Search under 42 U.S.C. ' 1983)

57.     Plaintiff MELISSA MCALLISTER repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "56" as if fully set forth herein.

58.     Defendant Andersen searched plaintiff Melissa McAllister under her pants and underpants and touched her vagina in the absence of any individualized reasonable suspicion that plaintiff was concealing weapons or contraband in that location.

59.     As a result of the foregoing, plaintiff Melissa McAllister was subjected to an illegal and improper search.

60.     The foregoing unlawful search violated plaintiff Melissa McAllister's constitutional right to privacy, as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

## AS AND FOR A THIRD CAUSE OF ACTION
### (42 U.S.C. § 1983—Excessive Force)

61.     Plaintiffs MELISSA MCALLISTER and KENNETH SAPP repeat and re-allege the allegations contained in paragraphs numbered "1" through "60" as if fully set forth herein.

62.     The level of force and the sexual contact employed by defendants was excessive, objectively unreasonable and otherwise in violation of plaintiff Melissa McAllister's constitutional rights.

63.     The level of force employed by defendants was excessive and objectively unreasonable and other otherwise in violation of plaintiff Kenneth Sapp's constitutional rights.

64.     As a result of the aforementioned conduct of defendants, plaintiffs Melissa McAllister and Kenneth Sapp were subjected to excessive force and sustained physical injuries and psychological injuries.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (42 U.S.C. § 1983—Failure to Intervene)

65.     Plaintiffs MELISSA MCALLISTER and KENNETH SAPP repeat and re-allege the allegations contained in paragraphs numbered "1" through "64," as if fully set forth herein.

66.     Each and every defendant had an affirmative duty to intervene on behalf of plaintiffs Melissa McAllister and Kenneth Sapp, whose constitutional rights were being violated in their presence by other officers.

67.     The individual defendants failed to intervene on plaintiff Melissa McAllister's and Kenneth Sapp's behalf to prevent the violation of their constitutional rights despite having had a realistic opportunity to do so.

68.     As a result of the foregoing, plaintiffs Melissa McAllister's and Kenneth Sapp's constitutional rights were violated and they were put in fear of their safety and subjected to unjustified physical abuses.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (42 U.S.C. § 1983 – Municipal Liability – Monell Claims)

69.     Plaintiffs MELISSA MCALLISTER and KENNETH SAPP repeat and re-allege the allegations contained in paragraphs numbered "1" through "68," as if fully set forth herein.

70.     Defendants, both collectively and individually, used excessive force on Plaintiff Melissa McAllister and Kenneth Sapp in the absence of any evidence of justification for the use of such force, notwithstanding their knowledge that said uses of force were unreasonable, unjustified, and would jeopardize Plaintiff Melissa McAllister's and Plaintiff Kenneth Sapp's liberty, well-being, safety and constitutional rights.

71.     The acts complained of were carried out by the aforementioned individual Defendant Police Officers in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

72.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

73.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies,

usages, practices, procedures, and rules of the City of New York and the New York City Police

Department, all under the supervision of ranking officers of said department.

74.     The aforementioned customs, policies, usages, practices, procedures and rules of

the City of New York and the New York City Police Department include, but are not limited to,

the following unconstitutional practices:

a.      the continuing practice or custom of New York City Police Officers utilizing disproportionate force in a punitive, retaliatory or otherwise wrongful manner in interactions with civilians generally;

b.      the continuing practice or custom of New York City Police Officers utilizing disproportionate force in a punitive, retaliatory or otherwise wrongful manner in interactions with minorities;

c.      the continuing practice of failing to properly screen, supervise, discipline, transfer, counsel, or otherwise control police officers engaged in the excessive use of force or in warrantless or otherwise unconstitutional arrests or otherwise impermissible violations of individuals' constitutional rights, particularly with respect to officers who are repeatedly accused of such acts;

d.      the custom or practice of members of the New York City Police Department known as the "Blue Wall of Silence, [2]" wherein members of the New York City Police Department intentionally and willfully fail to cooperate with investigations into the misconduct or corrupt activities of their fellow officers, a practice which leads New York City Police Officers to regularly condone and cover up police abuse of power by telling false and incomplete stories.

75.     The foregoing customs, policies, usages, practices, procedures, and rules of the

City of New York and the New York City Police Department evince deliberate indifference to

---

[2] Mollen, Baer, Evans, Lankler, Tyler, Armao, Cornfeld, "The City of New York Commission to Investigate Allegations of Police Corruption and The Anti-Corruption Procedures of The Police Department Commission Report," July 7, 1994, City of New York. Incorporated by reference herein and available online at http://www.parc.info/client_files/Special%20Reports/4%20- %20Mollen%20Commission%20-%20NYPD.pdf.

the safety, well-being, and constitutional rights of Plaintiffs Melissa McAllister and Kenneth Sapp.

76.    Upon information and belief, Defendant City of New York has not taken meaningful steps to eliminate the custom or practice of officers employing excessive force against civilians.

77.    Upon information and belief, Defendant City of New York has not taken meaningful steps to eliminate the custom or practice of officers actively or passively covering up other officers' misconduct, including but not limited to employing excessive force against civilians.

78.    Upon information and belief, Defendant City of New York has been, and continues to be, aware of the prevalence of the problem of officers of the NYPD engaging in excessive force and actively or passively covering up other officers' misconduct.[3]

---

[3] *See e.g. Ariza v. City of New York*, 1996 U.S. Dist. LEXIS 20250, 14 (E.D.N.Y. March 7, 1996) ["The [municipal] defendants concede, however, that the code exists to prevent other officers from reporting corruption or dishonesty by fellow officers.... [t]he principle behind the 'blue wall of silence' is that officers will suffer recrimination for breaking ranks and subjecting police conduct to public scrutiny."]; *White-Ruiz v. City of New York*, 1996 U.S. Dist. LEXIS 15571, 23 (S.D.N.Y. October 21, 1996) ["[P]laintiff offers sufficient evidence to permit a reasonable trier of fact to infer that the 'blue wall of silence' constitutes a custom or usage of the Department"]; *United States v. Rosario*, 237 F. Supp. 2d 242, 248 (E.D.N.Y. 2002) ["[Assistant U.S. Attorney] Palmer testified that while supervising the federal investigation into the Louima assault, she routinely confronted a 'blue wall of silence' erected by police officers and PBA officials intent on obstructing efforts to uncover the full truth about what had happened at the 70th precinct on August 9, 1997."]; *Griffin v. City of New York et al.*, 10-CV-01824 (E.D.N.Y. 2010) [Plaintiff detective sues on pattern of retaliation following his reporting fellow detective to Internal Affairs, fellow officers cover for detective accused of misconduct, see, e.g., at ¶35: "Internal Affairs conducted its investigation into [Detective] Plaintiff's allegations [of misconduct] against [Detective] McCarthy. All of the material witnesses failed to cooperate with the investigation by being less than truthful.... [a]s a result, the allegations made by Plaintiff against McCarthy were dismissed as unsubstantiated."]

79.     The failure of Defendant City of New York to meaningfully address these issues was underscored when the non-governmental organization Human Rights Watch conducted a study examining common obstacles to accountability for police abuse in fourteen large cities, including Atlanta, Boston, Chicago, Detroit, Indianapolis, Los Angeles, Minneapolis, New Orleans, New York, Philadelphia, Portland, Providence, San Francisco, and Washington, D.C.[4] Research for this report was conducted from late 1995 through early 1998. See fn19.

80.     The report stated: "The barriers to accountability are remarkably similar from city to city. Shortcomings in recruitment, training, and management are common to all. So is the fact that officers who repeatedly commit human rights violations tend to be a small minority who taint entire police departments but are protected, routinely, by the silence of their fellow officers and by flawed systems of reporting, oversight, and accountability. Another pervasive shortcoming is the scarcity of meaningful information about trends in abuse; data are also lacking regarding the police departments' response to those incidents and their plans or actions to prevent brutality. Where data do exist, there is no evidence that police administrators or, where relevant, prosecutors, utilize available information in a way to deter abuse." See Id.

81.     The report documented that the official response of the New York City Police Department and the City of New York to credible, persistent reports of abuse was to deny the existence of the problem. See Id.

---

[4] "Shielded from Justice: Police Brutality and Accountability in the United States," Human Rights Watch, June 1998.  Report incorporated by reference herein and available online at http://www.columbia.edu/itc/journalism/cases/katrina/Human%20Rights%20Watch/uspohtml/toc.htm.

82.    The report further documented that the New York City Police Department, and the City of New York failed to discipline officers in all but 1% of incidents in which complaints were filed with the Civilian Complaint Review Board. See Id.

83.    Upon information and belief, the report was presented to Mayor Rudy Giuliani of the City of New York, who denounced the report without reading it.

84.    Upon information and belief, Defendant City of New York has been, and continues to be, aware of the prevalence of the problem of officers of the New York City Police Department engaging in excessive force, but has failed to take action to remedy the problem.

85.    Upon information and belief, the above-referred constitutionally violative policies, practices and customs remain widespread, open, and notorious throughout the NYPD to date.

86.    Upon information and belief, the policymakers of the NYPD and Defendant City of New York are aware that these practices and customs of NYPD officers continue to date, and have failed to take adequate steps to curb these practices and customs, which regularly cause the violation of citizens Constitutional rights.

87.    In addition, the City of New York engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training and supervising its employees that was the moving force behind the violation of plaintiffs Melissa McAllister's and Kenneth Sapp's rights as described herein. As a result of the failure of the City of New York to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, defendant City of

-14-

New York has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

88.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York Police Department constituted deliberate indifference to the safety, well-being and constitutional rights of plaintiffs Melissa McAllister and Kenneth Sapp.

89.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York Police Department were the direct and proximate cause of the constitutional violations suffered by plaintiffs Melissa McAllister and Kenneth Sapp as alleged herein.

90.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York Police Department, plaintiffs Melissa McAllister and Kenneth Sapp were unlawfully injured, and subjected to physical and/or sexual abuse.

91.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating plaintiffs Melissa McAllister's and Kenneth Sapp's constitutional rights.

92.    All of the foregoing acts by defendants deprived plaintiffs Melissa McAllister's and Kenneth Sapp's of federally protected rights, including, but not limited to the right:

     A. to be free from excessive force;

     B. to be free from the failure to intervene;

C. to receive equal protection under law;

D. to be free from the continuing practice of failing to properly screen, supervise, discipline, or otherwise control police officers engaged in excessive use of force or other impermissible violations of individuals' constitutional rights, particularly with respect to officers who are repeatedly accused of such acts.

E. to be free from the custom or practice of members of the New York City Police Department known as the "Blue Wall of Silence," wherein members of the New York City Police Department intentionally and willfully fail to cooperate with investigations into the misconduct or corrupt activities of their fellow officers, a practice which leads New York City Police Officers to regularly condone and cover up police abuse of power by telling false or incomplete stories.

93.    As a result of the above constitutionally impermissible conduct, Plaintiffs Melissa McAllister and Kenneth Sapp were caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, legal expenses and damage to his reputation and standing within his community.

94.    As a result of the foregoing, plaintiffs Melissa McAllister and Kenneth Sapp are entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against each Defendant in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of their action.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Deprivation of Rights Under the New York State Constitution)

95.    Plaintiffs MELISSA MCALLISTER and KENNETH SAPP repeat and re-allege the allegations contained in paragraphs numbered "1" through "94," as if fully set forth herein.

96.    By the actions described above, the individual defendants used unnecessary and excessive force and subjected plaintiffs to unreasonable sexual contact and/or excessive force not

-16-

reasonably justified by any circumstances and used for no proper purpose, thereby violating plaintiffs' rights secured by Article 1, Section 6 of the New York State Constitution.

97.    As a consequence thereof, plaintiffs have been injured.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (State Law – Assault)

98.    Plaintiffs MELISSA MCALLISTER and KENNETH SAPP repeat and re-allege the allegations contained in paragraphs numbered "1" through "97," as if fully set forth herein.

99.    By reason of the foregoing, the defendants placed plaintiff Melissa McAllister in apprehension of imminent harmful and offensive contact, including non-consensual sexual contact, thereby committing an assault.

100.    As a consequence thereof, plaintiff Melissa McAllister has been injured.

101.    By reason of the foregoing, the defendants placed plaintiff Kenneth Sapp in apprehension of imminent harmful and offensive contact, thereby committing an assault.

102.    As a consequence thereof, plaintiff Kenneth Sapp has been injured.

103.    The individual defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

104.    As the employer of the individual defendants, Defendant City is responsible for the injuries Ms. McAllister and Mr. Sapp suffered, and continue to suffer, as a result of the conduct of the individual defendants pursuant to the doctrine of *respondeat superior*.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (State Law – Battery)

105.    Plaintiffs MELISSA MCALLISTER and KENNETH SAPP repeat and re-allege the allegations contained in paragraphs numbered "1" through "104," as if fully set forth herein.

106.    By reason of the foregoing, the individual defendants unreasonably struck Melissa McAllister in a harmful and offensive manner and subjected her to non-consensual sexual contact, thereby committing a battery.

107.    As a consequence thereof, plaintiff Melissa McAllister has been injured by suffering physical pain and mental anguish, together with shock, fright, apprehension, embarrassment and humiliation.

108.    By reason of the foregoing, the individual defendants unreasonably struck Kenneth Sapp in a harmful and offensive manner, thereby committing a battery.

109.    As a consequence thereof, plaintiff Kenneth Sapp has been injured by suffering physical pain and mental anguish, together with shock, fright, apprehension, embarrassment and humiliation.

110.    The individual defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

111.    As the employer of the individual defendants, Defendant City is responsible for the injuries Ms. McAllister and Mr. Sapp suffered, and continue to suffer, as a result of the conduct of the individual defendants pursuant to the doctrine of *respondeat superior*.

## AS AND FOR A NINTH CAUSE OF ACTION (for Plaintiff Sapp)
### (State Law – Denial of Medical Care)

112.    Plaintiff KENNETH SAPP repeats and re-alleges the allegations contained in paragraphs numbered "1" through "111," as if fully set forth herein.

113.    The individual defendants knew of plaintiff Kenneth Sapp's injuries, were in a position to provide him with access to medical care, and deliberately failed to take any steps to ensure proper medical care and follow-up.

-18-

114.    The individual defendants thereby displayed a deliberate indifference to plaintiff Kenneth Sapp's need for medical attention.

115.    As a consequence thereof, plaintiff Kenneth Sapp has been injured.

116.    The individual defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

117.    As the employer of the individual defendants, Defendant City is responsible for the injuries Mr. Sapp suffered, and continues to suffers, as a result of the conduct of the individual defendants pursuant to the doctrine of *respondeat superior*.

## AS AND FOR A TENTH CAUSE OF ACTION
### (State Law – Negligent Hiring and Retention)

118.    Plaintiffs MELISSA MCALLISTER and KENNETH SAPP repeat and re-allege the allegations contained in paragraphs numbered "1" through "117," as if fully set forth herein.

119.    Upon information and belief, Defendant City of New York failed to use reasonable care in the hiring and retention of the aforesaid defendants who conducted and participated in the arrest of plaintiffs Melissa McAllister and Kenneth Sapp.

120.    Defendant City of New York knew, or should have known in the exercise of reasonable care, the propensities of Defendant Andersen and defendant Police Officers John Doe and/or Jane Roe # 1-10 to engage in the wrongful conduct heretofore alleged in this Complaint.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### (State Law – Negligent Training and Supervision)

121.    Plaintiffs MELISSA MCALLISTER and KENNETH SAPP repeat and re-allege the allegations contained in paragraphs numbered "1" through "120," as if fully set forth herein.

122.    The individual Defendant Police Officers owed a duty to act according to the standard of ordinary care of a police officer.

-19-

123.    The individuals Defendant Police Officers breached that duty by failing to act as ordinary police officers would.

124.    Upon information and belief the Defendant City of New York failed to use reasonable care in the training and supervision of the aforesaid defendants who conducted and participated in the arrests of Ms. McAllister and Mr. Sapp.

125.    As a result of the individual defendants' conduct, Ms. McAllister and Mr. Sapp have been injured.

126.    The individual defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

127.    As the employer of the individual defendants, Defendant City is responsible for the injuries Ms. McAllister and Mr. Sapp suffered, and continue to suffer, as a result of the conduct of the individual defendants pursuant to the doctrine of *respondeat superior*

## AS AND FOR A TWELFTH CAUSE OF ACTION
### (State Law – Intentional Infliction of Emotional Distress)

128.    Plaintiffs MELISSA MCALLISTER and KENNETH SAPP repeat and re-allege the allegations contained in paragraphs numbered "1" through "127," as if fully set forth herein.

129.    One or more of the defendants intentionally and deliberately inflicted emotional distress on Ms. McAllister by using unnecessary excessive force, or subjecting her to unnecessary non-consensual sexual contact, or by violating her constitutional rights or knew or should have known that emotional distress was the likely result of their conduct.

130.    One or more of the defendants intentionally and deliberately inflicted emotional distress on Mr. Sapp by using unnecessary excessive force, or by violating his constitutional

rights or knew or should have known that emotional distress was the likely result of their conduct.

131.   Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

132.   As a result of the Defendants' intentional, extreme and outrageous conduct, Ms. McAllister and Mr. Sapp were, are, and, with a high degree of likelihood, will continue to be emotionally distressed.

133.   The individual defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

134.   As the employer of the individual defendants, Defendant City is responsible for the injuries Ms. McAllister and Mr. Sapp suffered, and continue to suffer, as a result of the conduct of the individual defendants pursuant to the doctrine of *respondeat superior*.

### AS AND FOR A TWELFTH CAUSE OF ACTION
### (State Law – Negligent Infliction of Emotional Distress)

135.   Plaintiffs MELISSA MCALLISTER and KENNETH SAPP repeat and re-allege the allegations contained in paragraphs numbered "1" through "134," as if fully set forth herein.

136.   One or more of the defendants negligently inflicted emotional distress on Ms. McAllister and Mr. Sapp.

137.   Defendants had a continuing affirmative duty to perform their duties as police officers in such a manner as not to inflict emotional distress on Ms. McAllister and Mr. Sapp.

138.   Ms. McAllister and Mr. Sapp never interfered with the police officers obligations under the above-described duties.

139.    As a result of the Defendants' negligent conduct, Ms. McAllister and Mr. Sapp were, are, and, with a high degree of likelihood, will continue to be emotionally distressed.

140.    The individual defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

141.    As the employer of the individual defendants, Defendant City is responsible for the injuries Ms. McAllister and Mr. Sapp suffered, and continue to suffer, as a result of the conduct of the individual defendants pursuant to the doctrine of *respondeat superior*.

## **DEMAND FOR A JURY TRIAL**

142.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury on all issues.

-22-

## PRAYER FOR RELIEF

WHEREFORE, MELISSA MCALLISTER and KENNETH SAPP pray for the following

relief:

      (a)    compensatory damages in an amount to be determined at trial, but no less

than $100,000 each;

      (b)    punitive damages in an amount to be determined at trial;

      (c)    reasonable attorneys' fees;

      (d)    costs and expenses; and

      (e)    such other and further relief as is just and proper.

Dated: Queens, New York
       September 14, 2012

                   ROCHELLE S. BERLINER, ESQ.
                   Attorney for Plaintiff
                   118-21 Queens Boulevard, Suite 504
                   Forest Hills, New York 11375
                   (718) 261-5600

By:    *Rochelle S Berliner*

                   Rochelle S. Berliner (RB 7463)

-23-